IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ROBERT HARRIS, et al.,      )
                            )
          Plaintiffs,       )
                            )
     v.                     )     1:11CV813
                            )
HHGREGG, INC., et al.,      )
                            )
          Defendants.       )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, Jr., District Judge**

Plaintiffs filed a complaint against Defendants in the Guilford County, North Carolina Superior Court, alleging violations of the North Carolina Wage and Hour Act ("NCWHA") and the North Carolina Retaliatory Employment Discrimination Act ("REDA"), and Defendants thereafter removed to this court. (See Petition (Doc. 1).) Stipulations of dismissal with prejudice have been filed as to four Plaintiffs (Doc. 26), leaving the claims of Plaintiffs Mark Compton and Robert L. Harris. Pending are Defendants' Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings with Respect to Plaintiff Mark Compton (Doc. 34) and Defendants' Motion for Summary Judgment (Doc. 40).

## I. BACKGROUND

Viewed in the light most favorable to Plaintiffs, the evidence shows the following.

Mr. Compton and Mr. Harris worked at an hhgregg store in Greensboro. In approximately February or March 2010, Mr. Compton, Mr. Harris, and other employees complained to sales manager Matt Buckner that they were not being paid commissions they were owed. (Defs.' Evidence in Supp. of Mot. for Summ. J., Ex. B, pt. 1, Deposition of Mark Daniel Compton ("Compton Dep.") (Doc. 42-4) at 3-8; Ex. A, pt. 1, Deposition of Robert Lee Harris, III ("Harris Dep.") (Doc. 42-1) at 4-5.)[1] Specifically, the complaints related to the way commissions were figured when customers presented discount coupons. (Id.) Other employees also voiced complaints about commission deductions to Mr. Buckner and to the general manager. (Pls.' Br. Opposing Defs.' Mot. for Summ. J. ("Pls.' Br."), Ex. C, Deposition of Christopher Paul Braswell ("Braswell Dep.") (Doc. 50-1) at 14-15; Ex. D, Deposition of John Wesley Gibbs ("Gibbs Dep.") (Doc. 50-1) at 18; Ex. E, Deposition of Damian Rayvon Hemingway

---

[1] All citations in this order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

("Hemingway Dep.") (Doc. 50-1) at 23; Ex. F, Deposition of Nicholas Anthony Anaya Vega ("Vega Dep.") (Doc. 50-1) at 28.)

In response to these complaints, Mr. Buckner instructed the employees to ring up the coupons under the customer service employee number, rather than their own employee identification numbers. (Id., Ex. A, Deposition of Mark Daniel Compton ("Compton Dep.") at 3; Ex. E, Hemingway Dep. at 25.) Mark McKnight, the general manager of the store, was also aware of the practice of using another employee number for discounted sales. (Id., Ex. C, Braswell Dep. at 15; Ex. D, Gibbs Dep. at 18; Ex. E, Hemingway Dep. at 24.)

In approximately August 2010, upper level management began investigating the practice of entering the coupon codes under the customer service employee number. (Id., Ex. A, Compton Dep. at 3; Ex. B, Deposition of Robert Lee Harris, III ("Harris Dep.") at 9-10.) Plaintiffs and other complaining employees were interviewed by Mark Ford, who handled hhgregg's loss prevention. (Id., Ex. B, Harris Dep. at 10; Ex. D, Gibbs Dep. at 19; Ex. I, Deposition of Mark Ford ("Ford Dep.") at 54-57.) Mike Malinowski, the company's regional asset protection manager, observed some of the interviews by way of a security camera located in Mr. McKnight's office. (Id., Ex. K at 71.)

During his interview, Mr. Harris informed Mr. Ford that he felt the deductions from his commissions were illegal. (Id., Ex. B, Harris Dep. at 11.) Other employees, who were later terminated, also informed Mr. Ford that they believed the practice of deducting from commissions was illegal. (Id., Ex. D, Gibbs Dep. at 20.) Mr. Malinowski was aware of these complaints. (Id., Ex. K at 68.)

Defendants identified sixteen employees who had entered coupon codes under the customer service employee number, a practice hhgregg believed was prohibited. (Id. at 94.) However, Defendants only terminated Mr. Compton, Mr. Harris, and the other employees who had complained that the deductions were illegal. (See Complaint ("Compl.") (Doc. 5) ¶¶ 21-28.) While the decision to terminate was signed by Cynthia Bush, she relied completely on the investigation and recommendations of Mr. Ford and Mr. Malinowski. (Pls.' Br., Ex. H, Deposition of Cynthia Bush ("Bush Dep.") (Doc. 50-1) at 46-51.)

## II. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as

a matter of law.  See Fed. R. Civ. P. 56.  The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  Id. at 255.  A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine.  Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48.  Material facts are those facts necessary to establish the elements of a party's cause of action.  Anderson, 477 U.S. at 248.  A dispute is only "genuine" if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Id.

**III. ANALYSIS**

    **(1) Employment Relationship**

Defendant hhgregg, Inc., contends it is entitled to summary judgment because it was not the employer of Mr. Harris or Mr. Compton. Plaintiffs have proffered evidence that hhgregg, Inc., was their employer, thus raising a disputed question of material fact, and hhgregg, Inc., is not entitled to summary judgment on this basis.

    **(2) REDA**

Both Defendants (hhgregg, Inc., and Gregg Appliances, Inc.) contend they are entitled to summary judgment on Plaintiffs' REDA claims because (1) the evidence shows that the person who terminated Plaintiffs did not know of Plaintiffs' protected activity; (2) Gregg discharged them for a legitimate, non-retaliatory reason, that is, dishonesty; and (3) there is no evidence of pretext.

To establish a prima facie case under REDA, an employee must show that: (1) he engaged in legally protected activity, (2) he suffered an adverse employment action, and (3) the employer took the adverse employment action because the employee

engaged in legally protected activity. Edwards v. PCS Phosphate Co., 812 F. Supp. 2d 689, 693 (E.D.N.C. 2011); Martin v. Nationwide Mut. Ins. Co., No. 1:99CV00956, 2001 WL 604192, at *8 (M.D.N.C. Apr. 20, 2001); Fatta v. M & M Props. Mgmt., Inc., 727 S.E.2d 595, 598-99 (2012). If the employee establishes a prima facie case, the burden shifts to the employer to show that it would have taken the adverse employment action in the absence of the legally protected activity. Edwards, 812 F. Supp. 2d at 693; Martin, 2001 WL 604192, at *8; Fatta, 727 S.E.2d at 599. If the employer does so, the burden shifts to the employee to show that the employer's proffered reason is a pretext for retaliation. Martin, 2001 WL 604192, at *8; Fatta, 727 S.E.2d at 599.

Defendants contend that Plaintiffs cannot establish a prima facie case because the person who fired Plaintiffs, Ms. Bush, did not know about Plaintiffs' complaints concerning commissions, and that therefore she could not have taken the adverse employment actions because of the protected activity. Plaintiffs counter that the actual decision-makers were Mike Malinowski and Mark Ford, each of whom did know about the complaints. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 290 (4th Cir. 2004). Plaintiffs have proffered

evidence sufficient to raise a disputed question of material fact as to whether Mr. Malinowski and Mr. Ford were the actual decision-makers, and thus Defendants are not entitled to summary judgment on that basis.

Defendants next contend that even if Plaintiffs have made a prima facie case, Defendants have established that they would have fired Plaintiffs in the absence of the complaints and that Plaintiffs have not shown that Defendants' reason — dishonesty — was a pretext. Plaintiffs have proffered evidence that only the employees who had complained about commissions were fired, whereas other employees who had engaged in the same allegedly dishonest behavior were not fired. This evidence is sufficient to survive summary judgment on the issue of pretext.

Accordingly, Defendants are not entitled to summary judgment on the REDA claim.

### (3) NCWHA

Both Defendants contend they are entitled to summary judgment on Plaintiffs' NCWHA claims because the NCWHA does not regulate how employers may calculate commissions. Plaintiffs contend that Defendants unilaterally changed the method of calculating commissions by deducting costs incurred by Defendants after the sale of the item, when their agreement with

Plaintiffs called for the amount to be calculated at the time of the sale. In reply, Defendants contend that this theory of liability is not in the Complaint.

The NCWHA defines the term "wage" to include commissions. N.C. Gen. Stat. § 95-25.2(16). Employers are required to notify employees, orally or in writing at the time of hiring, of the promised wages, the day and place for payment, and the policies on commissions and other wage-related benefits. N.C. Gen. Stat. § 95-25.13; Narron v. Hardee's Food Sys., Inc., 75 N.C. App. 579, 582-83, 331 S.E.2d 205, 207-08 (1985), overruled on other grounds by J & B Slurry Seal Co. v. Mid-South Aviation, Inc., 88 N.C. App. 1, 362 S.E.2d 812 (1987). Before decreasing an employee's wages, an employer must notify its employees, in writing or through a posted notice maintained in a place accessible to its employees, of such changes in promised wages at least 24 hours before the changes go into effect. N.C. Gen. Stat. § 95-25.13(3); Narron, 75 N.C. App. at 583, 331 S.E.2d at 207-08.

In their Complaint, Plaintiffs claimed Defendant hhgregg violated the NCWHA by considering coupons when calculating commissions. (Compl. (Doc. 5) ¶¶ 17-20, 35.) The Complaint does not mention any disagreement or objection to the method of

calculation based on deductions for post-sale costs. A plaintiff may not amend his complaint through argument in a brief opposing summary judgment. Tucker v. Union of Needletrades, Indus., & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990); see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008). Therefore, a claim based on deductions for post-sale costs is not properly before this court at this time.

Moreover, Plaintiffs failed to address Defendants' arguments concerning the coupon theory. When a party fails to respond to a summary judgment motion regarding a claim, the party essentially concedes that summary judgment in favor of the moving party is appropriate. Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) ("In [the plaintiff's] brief in response to [the defendants'] motion for summary judgment, [the plaintiff] does not address [the defendant's] motion for summary judgment concerning his hostile work environment claim. By failing to respond, [the plaintiff] concedes that he has not stated a hostile work

environment claim."); see also Allen v. Fed. Express Corp., No. 1:09CV17, 2011 WL 1260225, at *9 n.5 (M.D.N.C. Mar. 31, 2011) ("Summary judgment is also appropriate on this issue because Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment contains no argument in response to Defendant's motion for summary judgment as to the retaliatory demotion claim." (internal citation to record omitted)); Rogers v. Unitrim Auto & Home Ins. Co., 388 F. Supp. 2d 638, 641 (W.D.N.C. 2005) (ruling that plaintiffs who made no argument regarding a particular claim in response to a summary judgment motion "effectively abandon[ed]" said claim).

Therefore, Defendants are entitled to summary judgment on the NCWHA claims.

### (4) Mr. Compton's Bankruptcy

Also pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings with Respect to Plaintiff Mark Compton. (Doc. 34.) Defendants contend that because Mr. Compton filed for bankruptcy he lacks standing to pursue his claims in this case because they are now assets of the bankruptcy estate and that he should be estopped from asserting these claims because he failed to disclose them to the Bankruptcy Court.

On February 2, 2010, Mr. Compton filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of North Carolina ("Bankruptcy Court"), Case No. 10-10174. (Defs.' Br. in Supp. of Mot. to Dismiss, Ex. A, Voluntary Petition (Doc. 35-1).) The petition listed Mr. Compton's assets but did not list the claims in this case as assets. (See id. at 10-13 (personal property schedule).) Mr. Compton's complaints to hhgregg regarding his commissions began in February or March of 2010; soon thereafter, his supervisor allegedly came up with a solution to the coupon issue. Mr. Compton's Chapter 13 plan was confirmed on April 29, 2010. (Id., Ex. D, Order Confirming Plan Chapter 13 (Doc. 35-4).) Mr. Compton was terminated by hhgregg on September 15, 2010. He thereafter converted his bankruptcy case from Chapter 13 to Chapter 7; the Notice of Conversion did not disclose the claims in this case as assets. (Id., Ex. F, Notice of Conversion from Chapter 13 to Chapter 7 (Doc. 35-6).) The Bankruptcy Court issued a Discharge of Debtor on February 14, 2011 (id., Ex. 8 (Doc. 35-8)), after the Trustee determined that Mr. Compton had no assets to distribute to creditors. (See (Doc. 35-7) at 2, docket entry dated December 20, 2010).

A motion to dismiss for lack of standing attacks the district court's subject matter jurisdiction. See Allen v. Wright, 468 U.S. 737, 750 (1984) (describing standing as "perhaps the most important of [the jurisdictional] doctrines"). Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of an action based on lack of subject matter jurisdiction. When considering a challenge to the factual basis for subject matter jurisdiction, "the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," but "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

The relationship between subject matter jurisdiction, post-petition causes of action, and bankruptcy law was discussed at some length in Robertson v. Flowers Baking Co. of Lynchburg, Civil Action No. 6:11-cv-00013, 2012 WL 830097 (W.D. Va. Mar. 6, 2012):

> Under federal bankruptcy law, the bankruptcy estate comprises, with exceptions not applicable here, "all legal or equitable interests of the debtor in property as of the commencement of the case."

11 U.S.C. § 541(a)(1); see also 11 U.S.C. §§ 301-303. This definition "has been construed 'broadly to encompass all kinds of property, including intangibles.'" Logan v. JKV Real Estate Servs., 414 F.3d 507, 512 (4th Cir. 2005) (quoting Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 490 (3d Cir. 1997)). "More specifically, 'property of the estate' under § 541(a) has 'uniformly been interpreted to include causes of action.'" Id. (quoting Polis v. Getaways, Inc., 217 F.3d 899, 901 (7th Cir. 2000)); see also Richman v. Garza, 117 F.3d 1414 (Table), 1997 WL 360644 (4th Cir. Jul. 1, 1997) (observing that "[a] legal cause of action is an interest of the debtor in property within the meaning of section 541"). Causes of action that belong to the debtor's bankruptcy estate may only be pursued by the trustee, as representative of the bankruptcy estate. Nat'l American Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999).

. . . .

At the time of filing the bankruptcy petition, the debtor surrenders the right to control the estate, including existing or potential legal claims, to the bankruptcy trustee. *See* 11 U.S.C. §§ 323(a), 701; Richman, 1997 WL 360644, at *1. Thus, "[c]auses of action that belong to the debtor's bankruptcy estate may only be pursued by the trustee, as representative of the bankruptcy estate." A.T. Massey Coal Co., Inc. v. Jenkins, Civil Action Nos. 7:08-cv-5632009, 7:09-cv-3, WL 1437829, at *3 (W.D. Va. May 22, 2009) (citing Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999)). Significantly, the bankruptcy trustee's authority also extends over causes of actions, such as Plaintiff's claims here, that were never disclosed to the bankruptcy court in the debtor-plaintiff's bankruptcy filing. See, e.g., Sain v. HSBC Mortg. Servs., Inc., Civil Action No. 4:08-cv-2856, 2009 WL 2858993, at *5 (D.S.C. Aug. 28, 2009) ("a cause of action becomes a part of the estate whether or not it is disclosed by the debtor"); Hutchins v. Internal Revenue Serv., 67 F.3d 40, 43 (3d Cir. 1995) ("since the bankrupt estate retains

- 14 -

> unscheduled assets, only the bankruptcy trustee has
> the authority to control them").
>
> District courts within the Fourth Circuit have
> dismissed a plaintiff's claims for lack of subject
> matter jurisdiction where the debtor-plaintiff failed
> to disclose the existence of such claims in his or her
> Chapter 7 bankruptcy filing. See, e.g., Sain, 2009 WL
> 2858993, at *5 (dismissing for lack of subject matter
> jurisdiction because plaintiff did not have standing
> to bring suit when he was in Chapter 7 bankruptcy and
> observing that any claims plaintiff had belonged to
> the trustee); In re Family Dollar FLSA Litigation,
> Civil Action No. 3:08-cv-19332, 2009 WL 1750908, at *5
> (W.D.N.C. June 19, 2009) (finding that plaintiff
> lacked standing to pursue claims because they were the
> property of the bankruptcy estate, and only the
> bankruptcy trustee has standing to pursue such
> claims).

Robertson, 2012 WL 830097, at *3-4 (alterations in original), aff'd, 474 F. App'x 242 (4th Cir. 2012). The Robertson court held that the plaintiff's employment discrimination cause of action, which arose after confirmation but before the filing of a motion to convert his Chapter 13 bankruptcy petition to Chapter 7, was the "exclusive property of the bankruptcy estate," and that once the case was converted to Chapter 7, the "Plaintiff lost standing to pursue his ADA claims against Defendant, and Defendant's motion to dismiss for lack of subject matter jurisdiction must be granted." Id. at *4.

The appellate courts generally agree that assets acquired after confirmation are property of the estate, see, e.g., In re

Waldron, 536 F.3d 1239, 1243 (11th Cir. 2008); Barbosa v. Solomon, 235 F.3d 31, 36-37 (1st Cir. 2000), and that debtors have a continuing duty to disclose their assets, see, e.g., Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) (explaining that a debtor's duty to disclose financial affairs in bankruptcy filings "is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change"); In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."). The case cited by Plaintiffs, In re Batten, 351 B.R. 256 (Bankr. S.D. Ga. 2006), is of questionable validity since it pre-dates Waldron.

The court concludes that Mr. Compton's cause of action under REDA became the property of the bankruptcy estate when he was fired while his bankruptcy was pending, and that Mr. Compton therefore lacks standing to assert this claim. The court has no subject matter jurisdiction over this claim, and Defendants' motion should be granted.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** as to Plaintiffs' REDA claims and is **GRANTED** as to Plaintiffs' NCWHA claims.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 34) as to Mr. Compton is **GRANTED**.

This the 29th day of March, 2013.

*William L. Osteen, Jr.*
United States District Judge